Greta Curtis, Appellant in Pro Se, Robert A. Brown, Council for Appley, Amec Investments, LLC. You may. No problem. Good morning, your honors. Would you like to reserve any time for your reply? Yes, about five minutes if that's okay.  All right. Maybe. Thank you for allowing me to appear before you today. I think this is a very simple case, and the issues are very simple, although they've been basically sort of convoluted in order to get us here today. My main focus and points are that, number one, Mr. Brown is suspended from practicing in the bankruptcy court. That is on the bankruptcy site. That he's a non-compliant attorney. He represented Amec Investments, too, Inc., in this case, in an adversary case, which is not allowed. His suspension was for ECF privileges, wasn't it? Yes, it was. That is not a disqualifying event. That means that you can't file electronically. I'm sorry.  Pardon me. I'm sorry. I think he had duties that he did not follow up on. One was to pay a $500 fine. The other was to make application ex parte to be readmitted to practice before the bankruptcy court. That's why the information is still on the website, that he has not complied. But I think, to your point, this is on appeal. The bankruptcy court didn't take it as disqualifying. That's the bankruptcy court's policies to police. I'm not sure that that gets you where you want to go, even if we were to agree, because it's done. That's just one of the things, and I wanted to bring that to the attention of the court, because it was my understanding that the courts determine who can practice before them and who can't. It was surprising to see that there. I did bring it to the bankruptcy court's attention. The second thing is that the appellee has pursued this case or pursued this adversary, and there was no jurisdiction. When I say there was no subject matter jurisdiction nor personal jurisdiction, because of the simple fact that the appellee was a suspended corporation at the time it transferred the deed to my company. It was suspended by the Franchise Tax Board for not paying taxes. It revived itself, and upon revival, the law, basically California Revenue and Taxation Code, indicates that a condition of the reviver is that the suspended corporation cannot disavow agreements that it entered into while it was suspended. Other parties to the agreement may, meaning my company or myself. However, an appellee cannot disavow the transfer of the property. Another issue is that the declaratory relief actions were not, there was no substantive law supporting the declaratory relief actions. Appellee had already received a judgment in state court that the deed was void, but that wasn't good either, or that wasn't valid either, because the deed was void at the time that I conveyed the property, or at the time it conveyed, appellee conveyed its ownership interest, its title ownership interest to my company, to Sisters. Appellee no longer had any ownership in that property, and the only way for it to set aside a transfer was for it to basically allege some type of fraud on my behalf that I participated in or that Sisters participated in to acquire the deed from appellee. And in that case, we did have a trial. We had a civil trial in state court, and there was a finding that I had not engaged in fraud. That precluded any further litigation of a set-aside. Well, no, not technically, did it? I mean, it certainly precluded any further incident of fraud or anything based upon that fraud, but reading the state court's decision, it was for professional conduct, and that decision, written decision, is very clear that that is the basis in the Shepard-Mullin case and the applicable provisions of the Code of Professional Conduct. That's an independent basis, isn't it? Well, yes, that's true, but the problem with that is the professional conduct allegations were dismissed in that state court case in BC 610-877 early on. And I put those documents in my 12B6 motion when appellee filed this adversary proceeding and to point out to the judge, hey, even though the memorandum of decision has this information and it's not supported by the law, it was already dismissed. And if you look at the memorandum of decision and the judgment that was actually rendered in that case, if there was a finding that I had violated professional rules of conduct, then Judge Stern would have been within the law or he would have his decision to hold me liable in the judgment would have been accurate and would have been correct, but he didn't. He dismissed me. Well, he dismissed you, and then the only cause of action remaining was to cancel Amec's deed to sister-in-law, correct? Yes, but it was already canceled. It was canceled by the commands. Well, that's not what the court found. And the court went ahead and had a hearing, if not trial, default judgment hearing immediately afterwards on that cause of action. Well, even with that, a corporation acts through its employees or LLC acts through its employees. So if I was found not liable or culpable for fraud, then that particular finding inured to the benefit of sisters. Well, but that's as to the fraud. Isn't the issue dealing with the legal services that you violated California law with providing those legal services, that doesn't necessarily have to be fraud. No, it doesn't have to be fraud. And reading the record, it seems like that was the basis. You didn't, because you had violated the California law or the responsibilities as an attorney, you weren't entitled to attorney's fees, and the deed was to pay for attorney's fees. Don't those two things get tied together? No, I don't think so. And the reason why I say that is because the deed for the attorney fees was paid to me. We had a 7-day, 12-person jury that held I did not commit fraud. In order to do a quiet title action to set aside the— But this wasn't a quiet title action at the end. Okay. It was only to cancel one deed. That's why you were dismissed. The party as to that last cause of action was Sisters-in-Law. That's all that was being done by that point in time is, is that conveyance avoidable? And based upon the default and non-appearance of Sisters, default judgment was entered after testimony was heard or evidence presented by Amec. Okay. Well, the issue is that Sisters-in-Law, at the time the lawsuit was commenced and at the time the judgment was rendered, did not have ownership of that piece of property. I want to go back to the beginning, okay? And you got a deed for legal services. Yes. For services as a lawyer. But then the state court ruled that you had violated Rule 3-310C3 and 3-300 of the California Rules of Professional Conduct. Yes. It's not that you committed fraud, but that you didn't follow the California Code as an attorney. Okay. And that's why you weren't entitled to attorney's fees and therefore not entitled to a deed for the attorney's fees. Well, I beg to differ, Your Honor, because, number one, Amec was suspended when it transferred that property to me upon revival. But you got the property. Yes. You got the property for fees. And the court said you're not entitled to fees in essence because you didn't follow the California rule. But I wasn't there. You can't take, you can't kick me out of the case and take a defaulted defendant that has. That's the difference between, I mean, as you're aware, there's you individually and then there's your entities, which are separate. And as Judge Corbin indicated, ultimately this was to pay your fees. But the cornerstone of all of this is the transfer from Amec to Sisters. Yes. And Sisters didn't show, right? Yes, it didn't have to. It didn't have a dog in the fight, Your Honor. That's what I'm trying to tell you. The transfer happened May 6, 2014. And then I transferred Amec to Sisters was May 6, 2014. And then on May 19th, I transferred the property from Sisters to Dr. Roots. So at the time that all of these losses were commenced, Sisters did not have an ownership interest. Didn't have the ownership, but it was the first in the series, the chain. That's true. But in order for you to set aside the transfer, you have to have an underlying basis, undue influence, fraud. Lack of consideration. That too. Which is what the attorney's fees determination meant with regard to the initial transfer rate. Okay. But the issue is that they made a promise. Amec made a promise while it was suspended. And California Revenue and Taxation Code says you can't, Amec could not disavow that promise. It went through with it. Ultimately, I think you're aware you're under five minutes. Yes. But ultimately, the biggest problem is that's a valid state court judgment. We are not able to reexamine that judgment, are we? No. I agree with you. You're not. And that's what Judge Russell did. Judge Russell reexamined that state court judgment. He found that I violated professional responsibility, which the judgment does not say that. The judgment dismissed me. If Judge Stern found that I violated the law, he would have surely made that judgment against me. Not only that, a penalty dismissed me. A 12-person jury dismissed me, held in my favor. Okay. So you take me out because you don't want to deal with Revenue and Taxation Code suspension. So I can't come in and testify on behalf of Sisters. It's in default. Ninth Circuit says if an individual or a company doesn't have an interest in the property, it doesn't have to fight. There was nothing for Sisters to fight. Sisters gave up its ownership interest in 2014. It's a recorded document, 2014. This lawsuit was filed in 2016. B.C. 610-877, state court actions filed in 2016. You only have one year to go against an attorney for malpractice, which they did in that lawsuit two years later. That was precluded. That was dismissed, too, also. So what we have here is a situation where an appellee took his state court judgment over to bankruptcy court, and the bankruptcy court reinterpreted it and changed that judgment, that state court judgment, and it changed it because now Judge Russell was holding me liable for violation of professional rules of conduct, which that was dismissed from the B.C. 610-877 case. The negligence was dismissed. That's malpractice, too. That was dismissed, too. So what we have here is a reinterpretation of a state court judgment that's impermissible. You cannot do that. I want to remind you that you're at two minutes. Okay. I'll rest. I'll let Mr. Brown talk. All right. I just want to make sure you're on.  Sure. Thank you. Counsel? Good morning, Your Honors. I have a case to court. I'm Robert Brown for the appellee amic. Okay. So some short responses here. Judge Russell never, in any of the records here, oral argument, I was there at all of them, ruled or stated that at some point in time in the past, Greta Curtis had committed unethical conduct. That was never independently in front of him. We had no trial for that. The motion for summary judgment had nothing to do with that. He was just reading the state court judgment. And the case is very simple. Once we, my client, elected to void the deed, its deed from two sisters-in-law, Greta Curtis' LLC, which was established and not disputed in the state courts, that it was for attorney's fees, just as stated in Judge Stern's statement of decision in the judgment. Then we have to chase down the other deeds that Greta Curtis had been signing. I mean, just frankly, the bottom line is just to keep making us chase this through her various LLCs so we can finally get our property back. So then we have to go to the next step. And chase down the sisters-in-law to Roots' deed, which she signed. She controls sisters-in-law. She controls Dr. Roots. But she put Dr. Roots into a Chapter 11. So we had to chase her down in front of Judge Russell. It had been years since I'd been in front of Judge Russell, so I'll tell you I actually enjoyed it somewhat. Okay, so we do that and do the summary judgment. It is a very simple case. If the deed from sisters-in-law to Dr. Roots, if Dr. Roots had no association with Greta Curtis, if it had been some investment company, et cetera, paid good consideration, had no idea that Greta Curtis was involved with sisters-in-law and was doing unethical attorney's fees, well, that would have been the end of it. We can't get the property back in that situation. But that's not the case. She controls sisters-in-law. She controls Dr. Roots. So that's fairly straightforward to chase down and elect to void that deed. So then Greta Curtis had signed two pocket deeds, which are in the record. One is that's Exhibit F to our motion for summary judgment was the decorporation quick claim deed to Greta Curtis. So she says in a declaration that she filed, and I mention this, I state this in the brief toward the end here at page 42 of our brief. So she signed a deed from Dr. Roots to herself, and on the same day she signed a deed back to Dr. Roots. And I've listed that at page 42. She stated that in her declaration that was Doc 3, page 37 to 50. I described that at page 42 of our brief. She flagrantly committed a straw-buyer transaction. So, counsel, maybe you could help us with the claim that she makes. I'm sorry. The claim that she makes that the bankruptcy court interpreted the judgment and made a finding of either fraud or malpractice or something else rather than just simply saying there was a lack of consideration found by the state court for the transfer. It's actually not a lack of consideration. There is an attorney's fee. So it wasn't actually a lack of consideration, and I didn't. The motion for summary judgment did not go that route because there's two elements to BFP. When you say the motion of summary judgment, that's in front of the bankruptcy court. Right. Well, I think he's getting to the underlying voiding of the deed in the state court. In the state court? Yeah. Oh, well, in the state court, that's an unethical attorney fee. So it's not a question of whether there's – I mean, there is consideration that it's a deed. But she couldn't get paid because she committed ethical violations, so there wasn't any real value transferred to the entity for the transfer. Okay. So under the rule, an attorney, the California state rule, under the attorney who has multiple clients in a case and is going to take a fee and also in certain circumstances a fee in the form of an interest in the client's property, you have to have a written agreement, and you have to have the other clients – you have to disclose to the other clients that maybe there's going to be a conflict in the future, and so they have to understand this, waive those interests. Attorneys generally will avoid going too far in the weeds on that because that's a very risky thing for an attorney. Okay. But there are rules, and it can be done. She did none of that. Okay. So that's it. I mean, that deed is gone. Now, under Shepard Mullen, you see that an attorney can't… Counsel, before you get there, I mean, I'm trying to make this easier to understand here, but if appellant prevails as juror argument, if appellant prevails in her arguments, she will get paid for fees for which she was not entitled. Well, that's true. Is that the essence? That would be the effect of this is you would be nullifying the state court. Essentially, you'd be nullifying the state court judgment. Well, put the point… Because she controls those entities. …a finer point on that, though. From your argument, is it that there's no fees that AMIC owes, or is it that this cannot be the payment for it because it was not given, the interest in the property was not given with the requisite disclosure and consents? Right. What we obtained in the state court was the latter, not that she was not necessarily entitled to be paid at all. Shepard Mullen says… The major thing with Shepard Mullen is that the California Supreme Court said that even though you, the attorney, violated all these rules, et cetera, you can still sue in quantum error. And so that was left open. So Greta Curtis could… I mean, we're talking about many years ago now. Greta Curtis could have filed a quantum error case. And I'll just represent, to your honors, this issue is not really before the court because maybe she could do that. Who cares if she could do that now? It has nothing to do with our success here. But she did do that. I mean, as an officer of the court, I'll tell you, she did do a quantum error case, and she lost, so that case was dismissed. But whether she can do that or she will try that in the future, I have no idea. But we had a chase down. Sisters-in-law to Roots. Roots to Greta Curtis. Then she says that she did it back to herself, which raises an interesting question. Why are we here? I mean, she gave the property back to Dr. Roots, and Dr. Roots is still in Chapter 7. Okay, so… And Dr. Roots is not an appellant in this. Right, not an appellant. So just based on the record, she has no interest in this property. She literally gave it back to Dr. Roots years ago. And Dr. Roots and his honor said that Dr. Roots has no interest in it. But be that as it may, she has no interest in it. That's impossible. So then we have the $150,000 deed of trust. She assigned a deed of trust from Dr. Roots to her cousin, Vincent Thames, to muck up the title with a $150,000 deed of trust. But to your point, Judge Russell addressed that in the adversary, and that is not on appeal either. Really, the only thing that is on appeal is Ms. Curtis' interest, which is the deed from Roots and back to Roots. Right. I mean, that's a bottom line is that regardless of all the other issues, I mean, that's a simple, straightforward answer to it is, Ms. Curtis, you gave the property back to Dr. Roots, and Dr. Roots is in Chapter 7. Just Russell made his ruling. That's it. So can you address the one other issue that she raises, which is that somehow she's making a claim that AMIC had no right to disavow the transfer because AMIC was disabled, so to speak, under the corporate structure law of California at the time. In other words, she's suggesting that AMIC didn't have the right to bring a proceeding. Can you address that question? AMIC didn't have a right to bring a motion. It was essentially a suspended corporation and therefore lacked the ability to. Oh, okay. I'm sorry. Now I understand. Okay. So Greta Curtis raised this argument that at one time, it's about 10 years ago, AMIC became suspended in California for nonpayment of taxes, and she admits this. It got reinstated. And under California law, first of all, Greta Curtis said that the deed was already canceled. But that's not the case. If a company is suspended and engages in a transfer, let's say, of property, that transfer is completely valid legally until the other party comes in, not AMIC, who did the transfer. You can't use that as a sword to get out of contracts.  But the other party has to come into court under California Revenue and Taxation Code, file a lawsuit to void out that transaction. You're saying that it's voidable, not void. It would be the – well, it ended up neither because Greta Curtis never filed that lawsuit. She did not – so it was – Does that even matter at this point? I mean, I don't mean to be flip, but we have a valid state court judgment that addressed that. If AMIC had never been reinstated, we'd have an issue. It was reinstated almost 10 years ago. The issue is gone. She never filed a lawsuit to have anything voided out. That's the code, and I've cited the case law. There's no penalty. You don't go back retroactive. Oh, AMIC was suspended, so therefore it's lost certain rights, et cetera. That doesn't exist under California law. This argument about Revenue and Taxation Code is a total red herring, a rabbit hole that goes nowhere. It's just a waste of time to waste. And she's said this over and over again in various court cases, just to waste my time and my client's time. I mean, literally, that's what it is. I don't mean that pejoratively, but that's what it is. The Judge Spraker's question, though. The California court has decided this issue. Yes. Yes, it rejected this Revenue and Taxation Code argument, but it doesn't matter because we're just focusing on the issue. Greta Curtis, did you follow ethical rules? You didn't. You admit that that transfer to Sisters-in-Law was for your attorney's fees. Okay, so it's voidable by AMIC. My understanding of your argument is that the state court judgment decided that the initial transfer from AMIC to Sisters was void, and that's a given. And then the only thing really for Judge Russell to examine, excepting that the initial transfer was voided, is whether or not the subsequent transferees were bona fide purchasers for a value. Exactly. And what was the evidence presented to Judge Russell that they were not? Who had to burn a proof on that issue first? The party that claims BFP status has the burden to show that he or she or it is a bona fide purchaser for value. Greta Curtis' response is, no, I don't. I don't have to show that. Judge Russell said, I'm sorry, you do. And just refused to do it. It was in the record setter and never offered any evidence of any bona fide anything. Didn't even make the consideration argument, nothing. Just ignored that and went off on tangents about Revenue and Taxation Code and other things. But there is evidence in the record that the appellant was related to these other entities. Yes. She's the managing member of Sisters-in-Law, managing member of Dr. Roots. She controlled the whole show. And as I said before, if that hadn't been the case and we had been dealing with actual disinterested third party Dr. Roots, we would never have gotten to this point. But that's just not the case. She manipulated all of this to try to hang on to that property interest. And it didn't work then. And I submit that hopefully it's not going to work today. And we can move on. My client can move on finally and get back its property. I had to go through those subsequent deeds. That's all the case was about. In the normal course of anything, the attorney would just stipulate, okay, file his or her quantum Merowith case, prove up your attorney's fees, et cetera. They may very well get an award of attorney's fees as an attorney. She didn't do that. I mean, she tried that, but she lost. Any other questions? I don't have any other questions. Thank you. Thank you very much. Thank you. Ms. Curtis, I think you have squarely two minutes. Robert, your glasses.  First, I'd like to address also an issue that was in my brief, and that was in reference to Appellee admitted transferring the property to Sisters on my behalf for attorney fees. That created a trust, okay? That meant that AMIC was the trustee. Sisters was the ‑‑ I mean, AMIC was the trustor. Sisters was the trustee, and I was the beneficiary. The first cause of action in the adversary proceeding to cancel the AMIC to Sisters deed, I was not included in that. I had a right to participate. I believe the first cause of action was Sisters to Roots. There's a whole case's premise that the AMIC to Sisters is already void. I think it was against AMIC. I could be wrong, too, Your Honor. I'm sorry. But I believe that's what it was.  And this issue about the professional responsibility, I forgot about this during the trial. But anyway, the entities, the other entities that are represented in state court were suspended or either defunct. So I had no ethical duty to notify companies that were not either franchise tax board approved to participate in the legal proceedings or that the appellee had terminated by dissolving. So that's a nonissue. The other issue is the professional rule. I'm not sure. Where do you get that? I'm going to take you over your time, but where do you get the conclusion that you don't have a duty to inform those parties, even if the corporate status had lapsed? Well, because they were not my clients, number one. I couldn't represent dissolved and suspended companies. They were not my clients. I ask for your authority for it because I'm not sure that that's the law. I'm sorry, say that again. I'm not sure that that's the law, that what you just stated. Well, it's against the law for an attorney to represent a suspended or a dissolved corporation. They didn't have status. But you're talking about notifying parties of something that was there. Okay. I think they're different. Okay. Well, the president of the company that I did represent, these were his companies. Whenever he would get into trouble, he would make new companies up, move forward. And then that meant either dissolve or let him go into suspension so his creditors couldn't come after him. But wouldn't you have had a duty to respond to that president? To respond to the president? Well, I didn't know. Let that president. I didn't know. I came in to that case. Someone else was handling it, and I came in as an associate. I didn't know. All right. The professional rule issue was never tried against me in the BC 610-877 case. And then the other thing is, too, I have case law that says a memorandum or a statement of decision is not the holding of the case. That was drafted by Mr. Brown and probably Judge Stern in order, if I did take the case upon appeal or if it did go upon appeal, they would have the court of appeals, the state court of appeals, would have something to look at, something to figure out how Judge Stern came to the decision that he did. However, the professional rule issue was never decided against me. Even though it's in that memorandum, it was never litigated. You couldn't litigate it against Sisters because Sisters is not a legal corporation. I think we're about two minutes over now. Oh, I'm sorry. Thank you very much, though. Thank you very much. With that, the matter will be deemed submitted, and we will attempt to get a decision out as soon as possible. Thank you very much for the interesting argument.
judges: Spraker, Gan, Corbit